

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLEN HEFFERMAN, | ) |
| Plaintiff, | ) ) ) ) ) |
| | ) No. 04 C 5748 |
| v. | ) Paul E. Plunkett, Senior Judge |
| YALE P. BASS and JOHN ST. PIERRE, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Glen Hefferman ("Plaintiff") has sued John St. Pierre and his attorney, Yale P. Bass ("Defendant"), for their alleged violation of fiduciary duties as business partner and attorney, respectively, as well as for joining together to defraud Plaintiff. In his second amended complaint, Plaintiff alleges that he entered into a business venture with St. Pierre, who later converted all of the business funds through a series of intentional misrepresentations. On January 27, 2005, the Court granted Plaintiff's motion to default Defendant, St. Pierre. Bass has filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss Counts IV and V of Plaintiff's second amended complaint. In Count IV, Plaintiff claims that Bass's failure to exercise fiduciary duties, to advise Hefferman of potentially adverse interests, and to properly issue shares, combined with his preparation of a "release" document, directly caused St. Pierre's conversion of the funds and Hefferman's pecuniary damages. In Count V, Plaintiff alleges that St. Pierre enlisted the aid of Bass

to perpetuate the alleged fraud, and Bass knowingly entered into a scheme to defraud Hefferman. Defendant argues that Plaintiff fails to allege facts sufficient to support either claim. For the reasons set forth below, Defendant's motion is granted.

## Facts

In spring of 2003, St. Pierre and Hefferman joined as partners to purchase a functioning car wash business ("Skokie Car Wash"). (Pl.'s Compl. ¶¶ 7, 9.) At the request of St. Pierre, Hefferman agreed to provide the entire initial capital of $50,000 to cover startup costs. (*Id.* at ¶¶ 8-10.) In July 2003, St. Pierre introduced Hefferman to his attorney, Bass, who had represented some of St. Pierre's previous business ventures. (*Id.* at ¶ 14.) At that meeting, Hefferman was informed that Bass would take care of the legal paperwork for Skokie Car Wash. (*Id.*) Bass also told Hefferman that he had assisted St. Pierre in hiding assets from St. Pierre's former wife and offered to do the same for Hefferman. (*Id.* 16.) Hefferman understood that Bass would be representing both St. Pierre and Hefferman because Bass said he would protect them. (*Id.* at ¶¶ 14, 17.) Hefferman paid Bass's legal fees, which amounted to over $1,000. (*Id.* at ¶ 21.) In accepting the fees tendered by Hefferman in July 2003, Bass assured Hefferman that he would promptly complete all of the necessary paperwork in order to properly incorporate the new Skokie Car Wash, including registering the corporation, paying necessary fees, having shares issued, and creating bylaws. (*Id.* at ¶ 20.) However, the Skokie Car Wash was not incorporated until mid-September 2003 and Bass apparently never created the bylaws and issued the shares. (*Id.* at ¶ 25 ) In late August or early September 2003, St. Pierre instructed Bass to prepare a release agreement and, without first consulting Hefferman, Bass drafted a document that effectively divested Hefferman's interest in the car wash. (*Id.* ¶ 22.) St. Pierre

-2-

presented a single sheet of paper to Hefferman, which was the second page of the release agreement and requested Hefferman's signature. (*Id.* at ¶ 23.) Hefferman signed the single piece of paper which was part of a document that recited that Hefferman had resigned as a director and relinquished shares in the car wash business. (*Id.* ¶¶ 23, 24.) However, at the time the release was drafted, no shares had been issued nor had the corporate officers been elected. Bass' breach of his fiduciary duties and his numerous false statements contained in the release agreement constitute legal malpractice, which caused Hefferman's loss. (*Id.* at ¶¶ 31-33.) Hefferman alleges that Bass participated in the fraud by drafting the release agreement, and that from his participation, Bass profited and Hefferman was damaged. (*Id.* at ¶¶ 34-36.)

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Furthermore, any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader. *Id.*

## Discussion

In Count IV, Plaintiff alleges that Bass committed legal malpractice by breaching his fiduciary and professional duties to Hefferman, and as a result Hefferman lost his interest in the Skokie Car Wash. Under Illinois law, to state a claim for legal malpractice, a plaintiff must allege:

(1) the existence of an attorney-client relationship; (2) a breach of a duty arising from that relationship; (3) proximate cause proving that "but for" the attorney's negligence, the plaintiff would have prevailed in the underlying action; and (4) actual damages. *Mihailovich v. Laatsch*, 359 F.3d 892, 904 (7th Cir. 2004) (citing *Woidtke v. St. Clair County*, 335 F.3d 558, 562 (7th Cir. 2003)).

First, Defendant argues that the complaint does not argue the existence of an attorney-client relationship between Hefferman and Bass and thus a malpractice claim must fail. There is merit in this contention; the attorney-client relationship is established when attorney and client affirmatively consent to a "voluntary, contractual relationship" with one another. *In re Chicago Flood Litig.*, 289 Ill. App. 3d 937, 941 (1997). An attorney for a corporation owes a duty only to the corporate entity, not the individual shareholders, officers or directors. *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 271 (1995). In fact, in a closely held corporation, the interests of the shareholders are often times adverse, and it is not prudent for a single attorney to represent all incorporators as that duty would create an "unacceptably wide range" of conflicts. *Torres v. Divis*, 144 Ill. App. 3d 958, 963-64 (1986). An attorney may be liable for malpractice only to those whom he owes a duty, namely his clients and any intended third-party beneficiaries. *Kopka v. Kamensky & Rubenstein*, 821 N.E.2d 719, 723 (Ill. App. 2005).

In this case, Hefferman has not pled that he and Bass entered in an agreement separate and apart from the agreement that Bass take care of the legal paperwork for Skokie Car Wash. Rather, Plaintiff merely claims he was introduced to Bass, that Bass would prepare legal documents for the company and that he believed that Bass represented him. While the attorney-client relationship between the Skokie Car Wash and Bass is evident, the attorney-client relationship between Bass and Hefferman is not. Conceivably, the complaint could be read to require that Bass look after the

interests of both shareholders and company so long as there was no conflict of interest. It is also conceivable that because some of Bass's prior dealings with St. Pierre were shady and that St. Pierre directed Bass to draft a document that eliminated Hefferman's interest in the recently formed business, Bass should have been on notice that something was awry. Perhaps prudence would suggest an obligation to meet with Hefferman to inform him St. Pierre's intention. Admittedly, this analysis is a stretch, but pleadings at this stage must be read in the light most favorable to the Plaintiff, which includes drawing all reasonable and favorable inferences to him. *Forseth*, 199 F. 3d at 368.

The above analysis, however, is academic. The plaintiff must prove that but for the attorney's malpractice or fraud, he would not have sustained the pecuniary injuries he claims to have endured. *Lucey v. Law Offices of Pretzel & Stouffer*, 301 Ill. App. 3d 349, 353 (1998). The plaintiff must also prove what his recovery would be if the alleged malpractice had never occurred. *Fox v. Berks*, 334 Ill. App 3d 815, 817 (2002). This prong effectively demands that Plaintiff show that absent his attorney's malfeasance, he would not have suffered his damages. *Mihailovich*, 359 F.3d 892 (citing *Ignarski v. Norbut*, 271 Ill. App. 3d 522, 225-26 (1995)).

Here, Plaintiff pleads that "but for Bass's breaches" of taking direction solely from St. Pierre, failing to advise Hefferman that he drafted a release document, which required Hefferman's signature in order to be effective, failing to advise Hefferman that he and St. Pierre's interests may conflict, and failing to incorporate the company and issue shares in July rather than September, Hefferman would not have sustained any damages. Hefferman states he would not have paid Bass his legal fees and would have obtained quicker incorporation and issuance of shares to better protect his interests. He states that without Bass's negligence, he would not have lost his share of the

business. However, Plaintiff offers no possible cause or connection, beyond these conclusions, that the alleged negligence in failing to advise Hefferman in late August or early September that shares had not been issued, as well as the delay of incorporation permitted, enabled, or caused St. Pierre's looting of the corporation's funds and assets. Absent this causal connection, a claim for legal malpractice is not viable. Consequently, Defendant's motion to dismiss Count IV is granted.

In Count V, Plaintiff shifts from a malpractice claim in negligence to a aiding and abetting claim that is rooted in intentional behavior. In Illinois, to state a claim for aiding and abetting, referred to by Plaintiff as participation, a plaintiff must allege: (1) the party whom the defendant aids must perform a wrongful act which causes an injury; (2) the defendant must be regularly aware of his role when he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation. *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 24 (2003) (citing *Wolf v. Liberis*, 153 Ill. App. 3d 488, 496 (1987).

Here, Bass allegedly aided St. Pierre, and from the allegations it appears that St. Pierre's actions were indeed wrongful. Plaintiff states that because of Bass and St. Pierre's history, Bass should have known that St. Pierre would cheat in all of his business dealings and that Bass therefore knowingly helped St. Pierre swindle Hefferman of his investment. Plaintiff continues to state that Bass's failure to inform Hefferman of the contents of the release agreement shows that Bass knowingly and intentionally participated in St. Pierre's fraud. These allegations sound in negligence rather than fraud or intentional misconduct, and thus these allegation cannot support a claim for fraud. Further, nothing in the allegations even suggests that Bass knew (as opposed to should have known) either that St. Pierre was engaged in a fraud or that Bass willingly joined in his scheme.

At oral argument, Plaintiff suggested that Bass entered into a conspiracy with St. Pierre. St. Pierre may very well be engaged in a fraud. However, the inferences reasonably drawn from the facts simply cannot support a claim for intentional misconduct by the Bass.

## Conclusion

For the reasons set forth above, Defendant's Rule 12(b)(6) motion to dismiss Count IV and Count V is granted with prejudice.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: APR 1 5 2005